JUDGMENT ENTRY.
This appeal is considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12, and this Judgment Entry shall not be considered an Opinion of the Court pursuant to S.Ct.R.Rep.Op. 3.
Defendant-appellant Ricky Perkins was tried before a jury and convicted of abducting his former girlfriend, Lisa Godsey, and abducting and assaulting Godsey's friend, Glenna Kenney. In this appeal, Perkins argues that the abduction convictions were not supported by sufficient evidence, and that the jury's verdicts were contrary to the manifest weight of the evidence. We disagree.
On September 15, 2003, Godsey was in Cincinnati driving her car on Eastern Avenue with Kenney as a passenger. While they were stopped at a red light, Shane Morgan and Perkins pulled alongside them in Morgan's van. Perkins exited from the van and entered the unlocked back door of Godsey's car. He then punched Godsey in the mouth, causing her tooth to cut all the way through her skin. Perkins grabbed Godsey's keys and forced his way into the driver's seat by pulling Godsey's hair, while also telling Kenney not to move. He pushed Godsey onto the console between the two front seats and drove off like a "maniac," telling the women that he intended to kill them. Eventually Perkins let Kenney get in the backseat of the car, and they drove to a gas station located in Covington, Kentucky. Perkins and Godsey went into the station's store while Kenney remained in the car. Perkins told the women he would harm them if they made "a mistake." Kenney testified that she did not try to escape because she did not want to leave Godsey alone with Perkins.
After returning to the car, Perkins drove the women to Morgan's residence so he could collect money Morgan owed to him. Both Godsey and Kenney exited from the car, and Perkins drank alcohol and smoked marijuana with a few friends. Perkins held onto Godsey, but Kenney ran off and hid in the bushes, causing Perkins to think that she had escaped. Kenney reappeared after deciding not to leave Godsey alone. When she reappeared, Perkins ordered the women to get back in the car, and he then drove them to Mt. Adams. After an argument with Godsey, Perkins punched Kenney in the nose. Kenney jumped out of the car while it was stopped. She hid in the bushes and watched as Perkins drove around looking for her. Finally she ran down to the Serpentine Wall along the Ohio River and used a pay phone to call 911. Perkins took Godsey back to his camper in the East End, where the two argued some more and engaged in sexual intercourse. Godsey testified that Perkins never forced her to have intercourse, but that she knew he wanted it and she complied. When the police came to arrest Perkins later that evening, Godsey and Perkins were still in bed.
Kenney's 911 tape was played at trial. The police officer investigating Kenney's call, Officer Heyob, testified that Kenney had a swollen nose when he saw her. Photographs introduced by the state at trial demonstrated that Godsey had a facial injury consistent with a tooth cutting all the way through the skin.
To reverse a conviction for insufficient evidence, this court must be persuaded, after reviewing all the evidence in the light most favorable to the state, that no rational trier of fact could have found the essential elements of the crimes proved beyond a reasonable doubt.[1] A conviction is supported by sufficient evidence if the record contains substantial, credible evidence from which it could reasonably be concluded that all the elements of the charged offenses had been proved beyond a reasonable doubt.[2] To reverse on the manifest weight of the evidence, this court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and conclude that, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.[3] A new trial should be granted only in exceptional cases where the failure of the fact finder to correctly assess the evidence is obvious.[4]
Perkins was originally charged with kidnapping, but the trial court reduced the charge to abduction in violation of R.C. 2905.02(A)(1) at the end of the state's case. R.C. 2905.02(A)(1) provides that "no person, without privilege to do so, shall knowingly (1) by force or threat, remove another from the place where the other person is found." Perkins argues that the state did not establish all the elements of abduction because Godsey and Keeney did not escape, scream, or attempt to get help.
We reject Perkins's argument. The abduction statute does not require that the victims attempt an escape. Rather, the focus is on the perpetrator's conduct in removing the victims to another location by force or threat.
The evidence supported a finding beyond a reasonable doubt on all the elements of abduction. Perkins punched Godsey in the mouth and pulled her hair to get her keys. He told Kenney not to move. He then threatened to kill the women and drove in an erratic and dangerous manner for over an hour and a half, stopping at two locations. Both women testified that he brandished a knife. This testimony presented in the state's case-in-chief was sufficient to overcome Perkins's Crim.R. 29 motion, and it was sufficient for a jury to find that Perkins had used force and threats to gain control of Godsey's car and to recklessly drive both Godsey and Kenney around town against their will.
Perkins argues also that the convictions were against the manifest weight of the evidence because Godsey's and Kenney's testimony was so incredible and inconsistent. Defense counsel did a commendable job of exposing inconsistencies in Godsey's and Kenney's testimony and attacking their credibility. Morgan testified on behalf of Perkins, and his testimony contradicted that of the two victims. But we are mindful that assessing the credibility of the witnesses was primarily for the trier of fact,[5] and we cannot say that the jury clearly lost its way in finding Perkins guilty of abduction and assault based upon the evidence in this record.
Accordingly, we overrule the assignments of error and affirm the judgment of the trial court.
A certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.
Doan, P.J., Hildebrandt and Hendon, JJ.
[1] See State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio — 52,678 N.E.2d 541.
[2] See State v. Waddy (1992), 63 Ohio St.3d 424, 588 N.E.2d 819.
[3] See Thompkins, supra, at 387.
[4] Id.
[5] State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus.